1
2
3
4
5

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302
Voice: 818-225-9040
Facsimile: 818-225-9042

6

Attorneys for Plaintiff Hugo De Anda
and others similarly situated

7

ADDITIONAL COUNSEL LISTED ON NEXT PAGE

8

9

UNITED STATES DISTRICT COURT

10

CENTRAL DISTRICT OF CALIFORNIA

11

12
13
14
15
16
17
18

HUGO DE ANDA, on behalf of
himself and others similarly situated,

Plaintiff,

vs.

FORD MOTOR COMPANY, INC.,
and DOES 1 to 10,

Defendants.

Case No.

**CLASS ACTION**

**COMPLAINT FOR:**

**VIOLATIONS OF BUSINESS AND PROFESSIONS CODE SECTION 17200,** *et seq.*

19
20
21
22
23
24
25
26
27
28

1

2

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com

3   Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com

4   1100 Glendon Avenue
15th Floor Los Angeles, CA 90024

5   Telephone: (310) 432-8492

6

7   Manny Starr (319778)
manny@frontierlawcenter.com

8   Adam Rose (210880)
adam@frontierlawcenter.com

9   **Frontier Law Center**
23901 Calabasas Road, #2074

10  Calabasas, CA 91302
Telephone: (818) 914-3433

11  Facsimile: (818) 914-3433

12

13  Additional Attorneys for Plaintiff
Hugo De Anda and others similarly situated

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Hugo De Anda ("Plaintiff" or "De Anda"), individually and on behalf of all other California citizens similarly situated, brings this action against Defendant Ford Motor Company, Inc. ("Defendant" or "Ford"), upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record, and alleges as follows:

**INTRODUCTION**

1.    This matter arises from Defendant Ford's unlawful failure to tender a statutorily compliant California Emissions Warranty for the vehicles that Ford distributes in the state of California.

2.    In 1990, the California Air Resource Board ("CARB") submitted, and the Legislature adopted, California Code of Regulation §§ 2035, *et seq*., which, requires all vehicle manufacturers to ensure that any new motor vehicle sold in California is accompanied by a "statutorily compliant" general emissions warranty. ("California Emissions Warranty")

3.    In order to be "statutorily compliant," the emissions warranty must provide coverage for defects "which cause the failure of a warranted part [or] which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever occurs first[.]" [13 CCR § 2037(b)(2)].

4.    A "warranted part" is defined as any part installed by a manufacturer "which affects any regulated emission from a motor vehicle or engine[.]" [13 CCR § 2035(c)(2)(B)].

5.    When the part is considered to be a "high-priced" warranted part, the manufacturer must extend the emissions warranty from three years/50,000-miles, to 7-years or 70,000-miles. [13 CCR § 2037(b)(3)].

6.    In an effort by Ford to minimize its warranty exposure, Ford unilaterally and unlawfully limited the parts that are covered under Ford's application of the California Emissions Warranty, and when these parts are

CLASS ACTION COMPLAINT

defective, instead of covering the parts and related repairs under the California Emissions Warranty, Ford refuses to cover the parts under the California Emissions Warranty, harming its customers.

7.    Relevant to this case are the transmissions on vehicles distributed by Ford in California under the Ford brand name ("Class Vehicles"). As set forth herein, the transmissions in Class Vehicles are high-priced, emissions related parts which should have been covered for 7-years or 70,000-miles pursuant to the California Emissions Warranty requirements.

8.    As will be detailed further below, the California Air Resources Board determined that defects which cause illumination of the MIL are covered under the 7-years or 70,000-miles California Emissions Warranty for high-priced emissions related parts. This is because, pursuant to Title 13, Section 1968.2, the MIL is not supposed to illuminate unless the vehicle's onboard diagnostic system ("OBDII" or "OBD2") has detected a defect which increased regulated emissions.

9.    Furthermore, defects which cause illumination of the MIL would result in the vehicle failing a California smog check. Thus, defects which cause a vehicle to fail a California smog check also increase regulated emissions.

10.    Transmission defects in Class Vehicles increase regulated emissions, cause the MIL to illuminate, and cause the vehicle to fail a California smog check.

11.    Thus, transmissions in class vehicles are "warranted parts".

12.    As alleged in greater detail below, not only are the transmissions in Class Vehicles "warranted parts," but they are "high-priced" warranted parts whose repair or replacement is covered under the California Emissions Warranty for 7-years or 70,000-miless.

13.    Yet, in an effort to minimize its warranty costs, Ford has unilaterally, wrongfully, and unlawfully excluded many parts, including but not limited to transmissions, from being covered under Ford's emissions warranty as "emissions-related" parts, "warranted parts", and "high-priced" warranted parts.

CLASS ACTION COMPLAINT

On information and belief, Ford has never treated transmissions as "emissions-related" parts, has never treated transmissions as "warranted parts", and has never treated transmissions as "high-priced" warranted parts.  As a result, Class Members, including Plaintiff, have wrongfully been denied warranty coverage.

14.    As a result of Ford's systematic refusal to provide the proper emissions warranty coverage, Ford wrongfully required Plaintiff, and thousands of other Class Members, to pay out-of-pocket for repairs which should have been conducted free of charge under the 7-years or 70,000-miles emissions warranty.

15.    Further, as alleged below, by failing to cover the transmissions under the California Emissions Warranty, Ford also failed to provide a fully compliant California Emissions Warranty for all Class Vehicles at the time of sale, resulting in Class members overpaying for their vehicles.

16.    Plaintiff, on behalf of himself and all others similarly situated, seeks redress for Ford's violations of California law based on the causes of action set forth below. In addition, Plaintiff seeks an order, enjoining Ford's conduct; directing it to inform Class Members that repair and/or replacement of transmissions are covered under the 7-year or 70,000-miles emissions warranty; directing Ford to provide warranty coverage for the repair and replacement of defective Class Vehicle transmissions during the first 7-years or 70,000 miles of vehicle service; and for restitution relating to Ford's failure to provide a compliant California Emissions Warranty.

## BACKGROUND

17.    In order to understand the widespread effect of Ford's unlawful conduct, it is important to identify the statutory provisions at issue.

18.    In September 1990, and pursuant to its broad authority to regulate and reduce vehicle emissions under Health and Safety Code §§ 43013(a) and 43205, CARB submitted, and the Legislature adopted, California Code of Regulations ("CCR") §§ 2035, *et seq*., otherwise known as the "Emission Control

System Warranty Requirements for 1990 and Subsequent Model Year Passenger Cars, Light-Trucks, and Medium-Duty Vehicles."

19.    The Regulations require manufacturers to provide warranty coverage for defects relating to "warranted parts." As defined by the Regulations, a "warranted part" includes any part whose malfunction is required to, or can, cause the vehicle's Malfunction Indicator Light ("MIL") to illuminate—even though the primary function of the defective component is not directly related to emissions control. 13 CCR § 2035(c)(2)(B).

20.    The MIL is a light located on the driver's side instrument panel that, when illuminated, is amber in color and displays either a "Check Engine/Powertrain" message; a "Service Engine/Powertrain Soon" message; or the International Standards Organization's "engine symbol."

21.    The MIL illuminates to notify the driver of detected malfunctions in the vehicle's on-board diagnostic emission systems. In layman's terms, this means that when the MIL is illuminated, an emissions-related defect has been detected in the vehicle.

22.    One type of "warranted part" is an emissions-related part. An "emissions-related part" is defined in 13 CCR § 1900(b)(3) as any automotive part which affects any regulated emission from a motor vehicle which is subject to California or federal emission standards. This includes, at a minimum, those parts identified in the "Emissions-Related Parts List," adopted by CARB on November 4, 1977, as last amended June 1, 1990.

23.    Any defect which "cause[s] the failure of a warranted part [or] which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate" is entitled, by statute, to warranty coverage "for a period of 3-years or 50,000 miles, whichever occurs first[.]" 13 CCR § 2037(b)(2).

24.    As will be further detailed below, the transmission in Class Vehicles is a "warranted part" and an "emissions-related part" because its failure causes the

MIL to illuminate, and its failure increases regulated emissions.

25.     As set forth above, repair or replacement of any emissions-related components are generally covered by a California statutory 3-years or 50,000-miles emission warranty. However, if these emissions-related parts are determined to be "high-priced," then 13 CCR § 2037(c)(3) requires that the warranty coverage be extended from 3-years or 50,000 miles, to 7-years or 70,000 miles.

26.     A "high-priced warranted part" is defined as a warranted part whose individual replacement cost at the time of certification exceeds the cost limit established by the annual average nationwide urban Consumer Price Index ("CPI") for the calendar year two years prior to the model-year for which the cost limit is being calculated. [13 CCR § 2037(c)(3)]. Thus, to determine the cost limit for a high-priced warranted part in 2018, the calculation would need to utilize the annual average nationwide urban CPI for 2016.

27.     In calculating whether a particular part's individual replacement cost at the time of certification exceeds the cost limit, "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis." 13 CCR § 2037(c)(1). This calculation must utilize a price-point as would be charged "in the highest-cost metropolitan area of California." 13 CCR § 2037(c)(2).

28.     This cost limit shall be calculated using the following equation:

$$\text{Cost limit}_n = \$300 \times (\text{CPI}_{n-2} / 118.3)$$

29.     Cost limit$_n$ is the cost limit for the applicable model year of the vehicle rounded to the nearest ten dollars.

30.     If, upon conducting this calculation, the price of replacement exceeds the CPI cost limit, the part is a "high-priced" warranted part, and the manufacturer is statutorily required to extend warranty coverage for the part's repair or replacement from 3-years or 50,000 miles, to 7-years or 70,000 miles. 13 CCR § 2037(b)(3).

31.     When using the methodology required by the California Code of Regulations to calculate the cost of transmission replacement, the cost is always *greater* than $1,000.00. In fact, the cost to replace the transmission in Class Vehicles for all relevant model years is several thousand dollars. This is because the part cost of the transmission alone always exceeds $1,000, before factoring in the cost of labor.  However, the high-price cost limit has *never exceeded* $1,000. Thus, the cost of transmission replacements to Class Vehicles always exceeds the cost limit, and the transmission in class vehicles is a "high-priced" part.

32.     Because the transmissions in Class Vehicles are a "high-priced" warranted part as defined by 13 CCR § 2037(c)(1), its repair or replacement should have been covered by the 7-years or 70,000 miles California Emissions Warranty but wasn't.

## JURISDICTION AND VENUE

33.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state different from that of Ford; and (ii) aggregating the claims of individual Class members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) Ford is not a state, state official, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

34.     This Court has personal jurisdiction over Ford because Ford has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

35.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Ford conducts business within the State of California, has failed to designate with

CLASS ACTION COMPLAINT

the office of the California Secretary of State a principal place of business in California, and a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## PARTIES

36.     Plaintiff Hugo De Anda is, and at all times relevant hereto has been, an individual. At all times relevant, Plaintiff resided in Los Angeles County, California.  The repairs that give rise to this action were made to De Anda's vehicle in Los Angeles County, California.

37.     Defendant Ford was and is, a Delaware corporation, headquartered in Dearborn, Michigan, doing business in the State of California. Ford sells Vehicles, including the Class Vehicles, in the State of California.

38.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that Does 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of Ford at all relevant times.

39.     Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained. Each reference in this Complaint to "Ford" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

40.     Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, changing circumstances and/or new facts obtained during discovery.

///

///

CLASS ACTION COMPLAINT

**SUBSTANTIVE ALLEGATIONS**

41.    De Anda purchased and is the owner of a 2018 Ford Mustang, VIN 1FA6P8CF9J5124914 ("Subject Vehicle"). The Subject Vehicle was purchased by De Anda in the state of California and registered in the state of California.

42.    On March 15, 2022, at 62,128 miles, the Subject Vehicle was presented for repairs to Ford of Montebello, located at 2747 Via Campo, Montebello, CA 90640. Ford of Montebello is a Ford authorized repair facility.

43.    De Anda complained that the Subject Vehicle's check engine light was on, and that the Subject Vehicle "JERKS AFTER 40MPH AND WILL JERK FROM PARK TO DRIVE OR REVERSE."

44.    The condition was verified by Ford of Montebello, and the Subject Vehicle was diagnosed as having a slipping transmission and harsh engagements. Fault codes P2708 and P2705 were present.

45.    The work order relating to the repair attempt indicated a $170.00 diagnostic fee. Ford refused to cover the repair under the California Emissions Warranty, even though the defect increased regulated emissions, the transmission is a high-priced part, the vehicle had been in service less than 7-years, and the vehicle had been driven less than 70,000-miles. De Anda paid the diagnostic fee out-of-pocket, and was advised that he would have to pay to have his transmission replaced.

46.    The entire cost of the diagnosis and repairs relating to the transmission should have been covered and paid for by Ford under the 7-year or 70,000-miles California Emissions Warranty. This is because, pursuant to 13 CCR § 2037(c), the transmission should have been identified as a high-priced emissions-related part, and the parts relating to that repair should have been covered under the California Emissions Warranty pursuant to under regulation 2037(c). Furthermore, pursuant to California Code of Regulations Section 1968.2, slipping transmissions are malfunctions which CARB mandates must be

monitored, and the presence of a slipping transmission must trigger a MIL because a slipping transmission increases regulated emissions.

47.    Ford's failure to classify the transmission in Class Vehicles as a covered part under the California Emissions Warranty was an omission by Ford designed to limit its warranty exposure.

48.    Plaintiff's experience is just one of many examples of Ford's scheme to avoid providing a true and comprehensive list of all parts which should be covered under either a 3-year or 50,000 mile or 7-years or 70,000-miles California Emission Warranty.

49.    The details of how Ford actually applied the CCR and the CCR cost limit formula with respect to the transmissions in Class Vehicles are exclusively within Ford's possession— as is the information regarding what other parts Ford improperly omitted from its list of parts entitled to coverage under the California Emissions Warranty.

50.    Plaintiff presented the Subject Vehicle to a Ford authorized repair facility for repairs prior to the end of the 7-years or 70,000-miles California Emissions Warranty period for high-priced emissions parts. Instead of conducting these repairs under warranty as required by the regulations, Ford unlawfully denied warranty coverage for the transmission—a "high-priced" emission part which should have been covered under the 7-years or 70,000-miles California Emissions Warranty.

51.    The reason that Plaintiff was charged for the repairs was not the result of an individual oversight by Ford of Montebello in failing to identify the repairs as being covered under the 7-years or 70,000-miles California Emissions Warranty. Instead, Plaintiff was denied warranty coverage because Ford, in a systematic and organized attempt to increase profit, omitted from warranty booklets and internal dealership literature, parts which should have been identified as "emissions-related", "warranted parts" and as "high-priced" warranted parts

entitled to extended statutory coverage.

52.     Pursuant to 13 CCR § 2037(c)(1)(B), Ford is required to identify "high-priced warranted parts…which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

53.     Ford intentionally failed to identify all these components in order to increase profit vis-à-vis reducing the amount of money it spends on warranty-related repairs.

54.     If Ford complied with California law and properly identified all the parts which should have been identified as "high priced," then Ford dealerships would properly provide warranty coverage for high-priced warranted parts, and Plaintiff would never have paid out-of-pocket for repairs which were covered under warranty.

55.     In addition, Ford's failure to provide a comprehensive California Emissions Warranty that covered the transmission resulted in Plaintiff and the Class overpaying for their vehicles. In essence, Class Members paid for vehicles that purported to cover all required parts, including the transmission, pursuant to the California Emissions Warranty, but did not. Ford's refusal to include in its written warranty booklets coverage for the transmission in Class Vehicles under the California Emissions Warranty resulted in Ford's unjust enrichment and detriment to Plaintiff and the Class. This is because Class Members were supposed to be provided with warranty coverage which complied with Ford's California Emissions Warranty obligations. A compliant warranty has a value to Class Members and has a cost to Ford. Instead of Ford providing a compliant warranty, Ford has provided a deficient warranty which does not cover the transmission under the California Emissions Warranty, which Ford is lawfully obligated to cover. The non-compliant warranty provides less coverage and thus exposes Class Members to more financial risk and is less valuable to Class Members. Similarly, the non-compliant warranty costs Ford less money, because

it exposes Ford to less risk and will result in Ford paying out less in warranty claims.

56.    Class Members were entitled to a compliant California Emissions Warranty but were provided with a deficient warranty. As a result, Ford has been unjustly enriched by providing a deficient warranty which reduced Ford's costs, and Class Members have been damaged by not receiving the warranty that they were legally entitled to receive.

57.    In fact, irrespective of whether a Class Member's Class Vehicle underwent a repair to the transmission, Class Members were sold cars which were worth less than what Class Members actually paid for, by virtue of Ford's systematic failure to provide a warranty that covered the transmission under the California Emissions Warranty.

58.    Ford's conduct violates the Unfair Competition Law , California Business and Professions Code section 17200, et seq. (the "UCL").

59.    Plaintiff and other members of the Class have suffered damage as a result of Ford's wrongful conduct as alleged herein and therefore have standing.

## CARB DECLARATON

60.    CARB has provided a Declaration from Allen Lyons, who, at the time the Declaration was made, was the Chief of the Emissions Certification and Compliance Division of CARB regarding the California Emissions Warranty. The Declaration (hereinafter, the "CARB Declaration") was made "for the sole purpose of educating the Courts about CARB's interpretation and implementation of California's warranty requirements." The CARB Declaration sets forth CARB's interpretation of certain of the foregoing CCR provisions, including how to define a "warranted part" and a "high-priced" warranted part for purposes of the California Emissions Warranty.

61.    The CARB Declaration states, in relevant part, that "warranted parts" under the California Emissions Warranty "include any components that can or are

required to illuminate the OBD Malfunction Indicator Light (MIL) in the event of a malfunction, even if the primary function of the component is not emission control, within the warranty period. (Cal. Code Regs., tit. 13, § 2037, subd. (b)(2).) The MIL is a light located on the driver's side instrument panel that, when illuminated, is amber in color and displays "Check Engine/Powertrain," "Service Engine/Powertrain Soon," or the International Standards Organization (ISO) engine symbol; the MIL illuminates to notify the driver of detected malfunctions of OBD-monitored emissions systems on the vehicle. (Cal. Code Regs., tit. 13, § 1968.2, subds. (a), (d)(2.1.1) & (2.2.).)"

62.    The CARB Declaration also clarifies the standard for determining whether a warranted part is emissions-related. According to CARB, as set forth above, any vehicle part that causes the MIL to illuminate and/or affects regulated emissions is an emissions-related part under the California Emissions Warranty law. This is not the standard that Ford has been using.

63.    The CARB Declaration further provides that "When calculating the cost of labor portion of the replacement cost equation, in order to determine if a part is a "high-priced" warranted part for the purposes of California Code of Regulations, title 13, section 2037, subdivision (c), manufacturers first calculate the amount of time it would take to diagnose and repair or replace the part (the labor hours). A dollar amount is then attributed to the number of labor hours to come up with a cost of labor for each part. In doing this, manufacturers should use the labor hours and associated costs that would be charged to consumers to perform any required diagnosis and repairs to or replacement of the part, not the labor hours that manufacturers' service dealerships are allowed to charge manufacturers."

64.    Thus, based on the CARB Declaration, Ford is required to provide 7-years or 70,000-miles warranty coverage for all components whose failure affects any regulated emission and can or are required to illuminate the MIL, even if the

primary function of the component is not emissions control, and which are considered high-priced based on the amount a consumer would pay for the parts and labor associated with a defective component's diagnosis and replacement.

65.     Although the transmission in Class Vehicles affects regulated emissions and is considered a high-priced emissions related part, as further set forth below, Ford, as a matter of custom and practice, has failed to cover the transmission in Class Vehicles for 7-years or 70,000-miles as required by the CCR.

## THE TRANSMISSION IS AN EMISSIONS-RELATED PART

66.     CARB previously determined that a defective transmission is an emissions-related part entitled to extended coverage under the California Emissions Warranty.

67.     A public records request of CARB was served by Plaintiff's counsel in February of 2021. In response, CARB produced documents indicating that CARB had reviewed a customer complaint regarding a 2007 Nissan Altima PZEV vehicle with 122,232 miles. The customer complaint was regarding Nissan's denial of warranty coverage for a transmission replacement. The transmission needed to be replaced because of a malfunctioning pressure control solenoid, indicating imminent transmission failure. The failure of the component illuminated the vehicle's MIL and also caused it to fail a smog check.

68.     In the documents, CARB staff stated that the Nissan transmission replacement should be covered under the California Emissions Warranty because a fault code was triggered which caused the MIL to illuminate. CARB noted that the implications of requiring transmission repair/replacement under the California Emissions Warranty could lead to strong opposition from other vehicle manufacturers that would have handled the situation in a similar manner. However, CARB's recommendations remained unchanged.

69.    Notably, CARB pointed out that administration of the California Emissions Warranty is incorrectly "based on a list of emission related components instead of a more comprehensive approach." Further, CARB noted that "by adhering to the list of emission components, dealerships may not be honoring warranty coverage for certain repairs that should be covered." The CARB memos also confirm that the California Emissions Warranty applies to "any defect in materials and workmanship which would cause the vehicle's onboard diagnostic indicator light to illuminate."

70.    The document indicated that CARB recommend CARB legal review Nissan's warranty language to determine if transmissions are covered, require Nissan to repair the transmission for the 2007 Altima under the California Emissions Warranty, issue a memo notifying all manufacturers of the requirements of the California Emissions Warranty and informing them of their obligations to meet these requirements, and require all manufacturers to have their dealerships reimburse customers for repairs that should have been covered under the California Emissions Warranty.

71.    This recommendation from CARB demonstrates that a transmission is an emissions-related part and should therefore be covered under the California Emissions Warranty, especially where it triggers a fault code and affects regulated emissions.

72.    Further, a defect which causes a vehicle to experience increased fuel consumption and decreased fuel efficiency is a defect which affects regulated emissions from a motor vehicle or engine which is subject to California emission standards. Vehicles are expected to emit carbon monoxide and other hydrocarbons to a varying degree, depending on usage and fuel consumption. All things being equal, a vehicle which has increased fuel consumption and decreased fuel efficiency due to a defect in the engine or transmission will emit more carbon monoxide and hydrocarbons per mile driven than the same vehicle without the

defect. Any transmission malfunction in Class Vehicles, and all components related thereto, which causes a delay in shift time, a delay in acceleration, excessive transmission slipping, an increase in the engine's revolutions per minute beyond what is normal, a deviation from the vehicle's shift pattern as designed, or a decrease in fuel economy will increase greenhouse gas emissions, emissions regulated by 13 C.C.R. § 1961, as measured in grams of emissions per mile driven.

73.    Further, the defects which would cause the aforementioned conditions include but are not limited to a defect in the transmission valve body, a defect in a transmission clutch, a defect in a transmission shift solenoid, a defect in a transmission control module, a defect in numerous sensors installed in the transmission, and any other transmission defects which decrease fuel economy.

74.    A part is considered a "warranted part" under California Code of Regulations Section 2035 if the part increases regulated emissions. Regulated emissions will increase on a per mile driven basis when a vehicle's fuel efficiency decreases, and its fuel consumption increases. Accordingly, a part is covered under the California Emissions Warranty if it contains a defect which results in increased fuel consumption and reduced fuel efficiency. A malfunction in the transmissions installed in Plaintiff's vehicle and in the Class Vehicles which cause the transmissions to slip, causes a delay in shift time, a delay in acceleration, causes the engine's revolutions per minute to be higher than normal and/or results in a shift pattern that deviates from the shift pattern designed for the vehicle undeniably increases fuel consumption and regulated emissions.  It is axiomatic that when a vehicle has a shift time that is functioning outside of the certification standard and/or the transmission is slipping, the vehicle will have an improper shift pattern, increasing emissions and decreasing fuel efficiency.

75.     The defect or defects in the transmission in Plaintiff's vehicle resulted in excessive transmission slipping, resulting in an increase in regulated emissions, and a triggering of the MIL and related fault codes.

76.     Ford's own documents, including Ford's OBDII summaries discussed below submitted to CARB as part of the vehicle certification process, identify the specific fault codes relating to the transmission that directly correlate with increased emissions and confirm an emissions-related defect. Also, as confirmed by the Ford's OBDII summaries, these fault codes cause the OBDII MIL to be illuminated. The fault codes identified in Ford's OBDII summaries confirm that there is a defect relating to an emissions related part.

77.     As explained above, all of the Class Vehicles are equipped with an OBDII onboard diagnostic system. The system uses sensors to gather data which is evaluated using OBDII fault code logic. If the OBDII logic determines that the data is outside of an acceptable range, a fault code is triggered, identifying a defect which increases regulated emissions. When Ford seeks certification of vehicles for distribution in California, Ford is required, pursuant to 13 CCR 1968.2, to provide CARB with all of Ford's OBDII fault codes and the corresponding logic. Accordingly, when a part that is, or should be, covered under the California Emissions Warranty fails, triggering an OBDII fault code, it fails to perform as described in the vehicle's application for certification. Upon information and belief, these fault codes are submitted to CARB by Ford as "OBD2 Summary Tables". Ford submitted OBD2 Summary Tables or similar documents to CARB for every Class Vehicle and for every model year that the vehicles were certified for sale in California and that are at issue in this case.

78.     The OBD2 Summary Tables identify the Components/Systems monitored by OBDII, the acceptable ranges relating to the data gathered, the corresponding emission fault codes and that the MIL will be triggered when a defect is identified. The purpose of the OBDII system, as confirmed in the CCR, is

specifically to monitor emissions-related components. This is why Ford is required to develop a compliant OBDII system which identifies emissions related defects, triggering a fault code and a MIL. The fault codes are used to assist technicians in repairing the vehicles, whereas the MIL is used to alert the driver of a defect. This means that every defect that triggers the emissions fault codes identified by Ford in the OBD2 Summary Tables and the MIL is, by definition, an emissions-related defect. The OBD2 Summary Tables, among other documents, identify the parts that have not already been identified as emissions-related parts by Ford in its warranty books but which, when defective, can or do trigger an emissions fault code and result in illumination of the MIL.

79.    Therefore, Ford is required to cover under the California Emissions Warranty any defect that triggers a fault code identified by Ford in its OBD2 Summary Tables submitted to CARB or that should properly be identified on the OBD2 Summary Tables, because such a defect affects regulated emissions.

80.    A defect in the transmission that triggers emissions fault codes in the OBDII system and identified on the OBD2 Summary Tables will also cause the MIL to illuminate.

81.    Furthermore, defects in the transmission will trigger multiple codes and will illuminate the check engine light.

82.    The foregoing framework and analysis addresses and precludes any potential "slippery slope" argument or concern that every vehicle part could potentially be "emissions-related." This litigation is not dependent on the assertion that "emissions-related parts" are defined as every part in the OBDII system. Rather, this litigation asserts that there should be California Emissions Warranty coverage, at the very least, for the parts, components, or systems whose defects trigger fault codes identified on the OBD2 Summary Tables and cause the MIL to be illuminated. This includes the transmissions installed on Class Vehicles. This is

because said parts undeniably are "emissions-related" and fail in a manner that increases regulated emissions.

83.    Ford knows which fault codes these are because Ford is required to provide to CARB all the fault codes that trigger a MIL and the specific emissions-related conditions that trigger the fault codes as set forth in the OBD2 Summary Tables. Further, as confirmed in the CARB Declaration, emissions-related parts include any components that "can" or are required to illuminate the MIL in the event of a malfunction, even if the primary function of the component is not emissions control.

### THE TRANSMISSION IS A HIGH-PRICED WARRANTED PART

84.    As part of the certification process for a vehicle, the manufacturer determines which parts it considers to be "emissions parts" and submits a list of those parts to CARB. Section 2037(c). At the same time, the manufacturer also identifies the parts from the emissions parts list that the manufacturer has determined, based on the cost calculation set forth in the CCR, exceeds the cost limit and therefore are "high-priced" parts entitled to extended 7- year/70,000-mile coverage.

85.    California Code of Regulations Section 2037(c)(1) states that in calculating whether an individual replacement cost at the time of certification exceeds the cost limit, "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis." Similarly, Section 2037(c)(2) states that "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis."

86.    On August 21, 2017, CARB published Manufacturer's Advisory Correspondence 2017-03 ("MAC 2017"). The subject of MAC 2017 was entitled "Cost Limit for High-Priced Warranted Parts for New 2018 Model-Year (MY) Passenger Cars (PC), Light-Duty Trucks (LDT), Medium-Duty Vehicles and Engines Used in These Vehicles."

87.    Relevant here is that MAC 2017 "identifies the cost limit for high-priced warranted parts of MY2017 [passenger cars]." Because Class Vehicles are passenger cars, MAC 2017 establishes the cost limit for high-priced warranted parts for the Subject Vehicle, and all Class Vehicles, is $610.00.

88.    Pursuant to 13 CCR §2037(c) or §2435(b), as applicable, the cost limit for high-priced warranted parts for model year 2018 passenger cars is calculated using the annual average nationwide urban consumer price index (CPI) for 2016—the calendar year two years prior to the model-year for which the cost limit is being calculated. This CPI is published by the U.S. Bureau of Labor Statistics. When rounded to the nearest ten dollars, the model year 2018 cost limit is $610.00, as calculated below:

$$\text{MY2018 Cost Limit} = \$300 \times (\text{calendar 2016 CPI/baseline CPI})$$
$$= \$300 \times (240.0/118.3)$$
$$= \$610.00$$

89.    The $610.00 cost limit accounts for the total cost to diagnose and replace a warranted part. When the cost to diagnose and replace a warranted part exceeds $610.00, then the warranted part's replacement, by operation of law, must be provided warranty coverage for 7-years or 70,000-miles—whichever occurs first.

90.    Further, under a section entitled "High-Priced Warranted Parts Cost Documentation in the Applications for Certification" the MAC makes explicit that "[m]anufacturers must submit in their applications for certification the documentation used to identify the high-priced warranted parts in accordance with 13 CCR §2037(c)(3), §2435(b)…[T]he documentation shall include all emission-related parts costing more than $510…(i.e., calculated cost limit minus $100) to replace…This documentation shall substantiate that the list includes all potential high-priced parts. The documentation shall include the estimated retail parts costs, labor rates in dollars per hour, and the labor hours necessary to replace the parts

including standard diagnosis. If the labor hours being charged for customer-pay repairs are different from those specified by the manufacturer for warranty repairs, the manufacturer shall substantiate the labor hours specified. All applications and required documentation (i.e., high-priced warranted parts list, potential high-priced parts, and cost calculations) must be submitted using the California Air Resources Board's (CARB) Document Management System."

91.    On information and belief, Ford has never identified the transmission in Class Vehicles as emissions-related parts for which it does a high-priced cost analysis. Regardless, the transmissions in Class Vehicles are inarguably high-priced parts, because the replacement cost of the transmission exceeds several thousand dollars, and has exceeded several thousand dollars for the entirety of the time period relevant to this case.

92.    With regard to Plaintiff's vehicle, Ford of Montebello advised Plaintiff that the transmission in his vehicle needs to be replaced due to the transmission slipping. The part cost of the transmission in Plaintiff's vehicle is at least $2,966.21. Furthermore, the time needed to replace the transmission is no less than seven hours, with an average labor rate which typically exceeds $100 per hour. Therefore, the replacement cost of Plaintiff's transmissions exceeds $3,600.

93.    Since the cost to replace the transmission in model year 2018 Class Vehicles was above the high-priced cost limit for 2018 as set forth above of $610, and because the transmission is an emissions related part as set forth herein, the transmission in model year 2018 class vehicles is a high-priced warranted part which should have been covered for 7-years or 70,000-miles pursuant to the California Emissions Warranty.

94.    Furthermore, the cost to replace the transmission for all model year Class Vehicles is above the high-priced warranted part threshold in the model years they were produced.

95.    Thus, by failing to provide a 7-years or 70,000-miles warranty for the

transmission in Class Vehicles, Ford violated the UCL.

## CLASS ACTION ALLEGATIONS

96.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

97.    Plaintiff brings this action on his own behalf, as well as on behalf of all Class members similarly situated, pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(1), (2) and/or (3) and/or (c)(4).

98.    Plaintiff reserves the right to redefine the Class and Subclasses and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

99.    Ford's California Emission Warranty applies to vehicles purchased and registered in States which, in the year the vehicle was distributed, had adopted the California Emissions Warranty, i.e., "Reg. 177 States" or "Section 177 States".

100.    Defendant's emissions warranty representations arise out of California law that Defendant must apply outside of California to the vehicles in the States listed. Accordingly, Defendant's conduct was specifically intended to have effects outside of California and was specifically intended to apply to vehicles and members of the Classes in those States that Defendant chose to include by the express terms of the California Emissions Warranty.

101.    Under these unique circumstances, California has a specific interest in regulating conduct outside of California that specifically invokes California emissions requirements and California emissions regulations and has an interest in preventing illegal practices that involve breach of California Emissions Warranty law that Defendant has chosen to invoke outside of California in the States covered by the Reg. 177 Class and Subclass. As Defendant seeks to apply the California Emission System Warranty to members of the Classes and vehicles in the listed States outside of California, members of the Classes in those States likewise should be included in a claim that seeks to vindicate their rights under

CLASS ACTION COMPLAINT

that same warranty in California and should have the ability to have their rights under that warranty asserted in California and pursuant to California law.

102. Ford's own express application of the California Emissions Warranty constitutes a sufficient connection between California and out-of-state potential Class members. Further, Ford's misconduct, namely, Ford's failure to identify all emissions-related, high-priced warranted parts to CARB, a California regulator, occurred in California, and even out-of-state purchasers were harmed by Ford's conduct that occurred in California. Ford failed to disclose, in its submissions to CARB, the parts that are properly covered by the California Emissions Warranty, including, but not limited to, the transmission.

103. Ford is solely responsible for selecting and identifying to CARB all of the parts that should be classified as emissions warranted parts, and high-priced warranted parts, and Ford failed to include the transmission and other components. Californians and out-of-state potential Class members in the additional States covered by the California Emissions Warranty suffered an identical harm – they were forced to pay the costs of transmission diagnosis, repair, or replacement, which should have been covered under the California Emissions Warranty, and were provided with warranties which were less valuable than the warranties they were legally entitled to at the time they purchased or leased their Class Vehicle. Under these unique circumstances, California has the greater interest in applying California's consumer laws to enforce compliance with the California Emissions Warranty than the other States have in using their consumer laws to enforce the same Regulation. California has a specific interest in regulating conduct outside of California that invoke California emissions requirements and regulations, and California has an interest in preventing illegal practices that involve breach of California emissions law that Defendant has chosen to invoke outside of California in the specific States covered. California also has a supreme interest in applying its own consumer protection laws in ensuring that the California

Emissions Warranty is properly interpreted and applied wherever Ford has chosen to invoke it.

104.    Under the facts of this case, the law of California should be applied because California's interest would be impaired if its consumer laws to enforce the California Emissions Warranty were subordinated to consumer laws of the other States. Other jurisdictions' interests in applying their own consumer protection laws to their own residents do not strongly outweigh the interest California has in applying its consumer protection laws to enforce the California Emission Warranty with respect to the specific potential out-of-state members of the Classes identified herein. Therefore, the Classes alleged herein include persons who purchased or leased Class Vehicles that are registered in States other than California.

105.    There is sufficient similarity among all the Class Vehicles and Ford's conduct as defined herein in that, among other things, all of the vehicles in the proposed Classes are subject to the same California Emissions Warranty and the same requirements that Ford report all emissions-related defects to CARB pursuant to the CCR. Ford has acted in a uniform manner with respect to all Class Vehicles by failing to properly cover transmissions in the Class Vehicles as required under the California Emissions Warranty and as described herein.

106.    Accordingly, Plaintiff's proposed Class and Subclasses consist of and are defined as follows:

California Class and Subclass:

> All persons in the State of California who have been owners or lessees of Class Vehicles and whose transmissions are not covered for 7-years or 70,000-miles (the "California Class").

> All persons in the State of California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts pertaining to defective transmissions which occurred outside of the Class Vehicle's powertrain

warranty period but prior to 7-years or 70,000-miles (the "California Out-of-Pocket Subclass").

Reg. 177 Class and Subclass:

> All persons who have been owners or lessees of Class Vehicles in a State which, in the year their vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States) and whose transmissions are not covered for 7-years or 70,000-miles (the "Reg. 177 Class").

> All persons who have been owners or lessees of Class Vehicles in a State which, in the year their vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States) and who have paid for repairs and parts pertaining to defective transmissions which occurred outside of the Class Vehicle's powertrain warranty period but prior to 7-years or 70,000-miles (the "Reg. 177 Out-of-Pocket Subclass").

> Excluded from the Classes and Subclasses are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing. Also excluded are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

107.    There are common questions of law and fact as to members of the Class and Subclasses that predominate over questions affecting only individual members, including, but not limited to:

(a)    Whether Ford has failed and is failing to acknowledge that the transmission installed in the Class Vehicles should be covered under the 7-year, 70,000-mile California Emissions Warranty, pursuant to California law;

(b)    Whether Ford's failure to comply with the California Emissions Warranty by failing to provide a 7-year, 70,000-mile California Emissions Warranty for the transmissions installed in the Class

Vehicles damaged Class members when they purchased or leased a Class Vehicle with a less valuable warranty than they were entitled to;

(c)    Whether Ford engaged in and is engaging in a systematic business practice of failing to identify that the transmission installed in the Class Vehicles should be covered under the 7-year, 70,000-mile California Emissions Warranty, pursuant to California law;

(d)    Whether Ford's conduct is an unlawful and unfair business practice in violation of California Business & Professions Code section 17200, *et seq*.;

(e)    Whether Plaintiff and Class members are entitled to declaratory and injunctive relief regarding Ford's failure to identify that the transmission installed in the Class Vehicles should be covered under the 7-year, 70,000-mile California Emissions Warranty, pursuant to California law;

(f)    The appropriate remedy for Ford's violations of California law.

108.    There is a well-defined community of interest in the litigation and the Class members are readily ascertainable:

(a)    <u>Numerosity</u>: The Class members are so numerous that joinder of all Class members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

(b)    <u>Typicality</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom he has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class members as demonstrated herein.

(c)  <u>Adequacy</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationship, conflicts or differences with any Class member. Plaintiff's attorneys, the proposed Class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class member.

(d)  <u>Superiority</u>: The nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

**TOLLING OF THE STATUTE OF LIMITATIONS**

109.  Ford engaged in misleading and dishonest conduct relating to its failure to identify all of the parts, including the transmission, that should be covered pursuant to the California Code of Regulations regarding the California Emissions Warranty. Despite acting diligently, Plaintiff and Class members lacked the resources and had no realistic ability to identify the specific parts that should have been covered. Plaintiff and Class members cannot be reasonably expected on their own to learn or discover what parts should be covered under the California Emissions Warranty. Therefore, the delayed discovery rule is applicable to the

claims asserted by Plaintiff and Class members, and the statute of limitations for bringing the claims set forth herein should be tolled.

110.    Ford has actual and constructive knowledge that it is violating California law by failing to identify all of the parts that should be covered under the California Emissions Warranty. Ford has concealed from Plaintiff and Class members that Ford is violating California law as set forth herein. Any applicable statute of limitation is tolled by Ford's wrongful conduct set forth herein, and Ford is estopped from relying on any statute of limitation because of its conduct.

**FIRST CAUSE OF ACTION**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

**By Plaintiff, the California Class, and the Reg. 177 Class Against All Defendants**

111.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

112.    California Business and Professions Code section 17200, et seq. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Ford has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

113.    The UCL imposes strict liability. Plaintiff need not prove that Ford intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

114.    Ford is a "person" as defined by Business & Professions Code § 17201.

115.    As a direct and proximate result of Ford's acts and practices in violation of the UCL, Plaintiff and members of the Classes have suffered injury in fact and lost money or property as set forth above and will continue to do so.

116.    **Unlawful Prong**.    A business practice is "unlawful" under the UCL

if it is forbidden by law or regulations, including standard of professional conduct. The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

117.   Ford failed to comply with the California Emissions Warranty requirements pursuant to the CCR by failing to provide 7-year and 70,000-mile warranty coverage for the transmissions installed in the Class Vehicles where coverage should be provided pursuant to the CCR. The California Emissions Warranty applies to all Class Vehicles. 13 CCR 2037(a). Pursuant thereto, manufacturers shall warrant that vehicles conform with the California Air Resources Board regulations, and are free from defects which cause the failure of a warranted part to perform as described in the application for certification, including defects which would cause the vehicle's on-board diagnostic malfunction indicator to illuminate, for 3 years or 50,000 miles. 13 CCR 2037(b)(1)- (2). The vehicle manufacturer is Ford, which is the manufacturer granted certification for the Class Vehicles. 13 CCR 2035(c)(5). The parts at issue are all warranted parts. The warranty period shall be 7-years and 70,000-miles for high-priced emissions parts. 13 CCR 2037(b)(3). High-priced emissions parts are those parts which, when taking into consideration the cost to diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR 2037(c)(3). The California Air Resources Board published memos which calculated the cost limit for the Class period. Although the transmissions installed in the Class Vehicles exceeded the cost limit for the correlating years and should have received California Emissions Warranty coverage, Ford failed to provide 7-year and 70,000-mile warranty coverage for said parts. The failure has resulted in damage to Plaintiff and members of the Classes.

118.   Ford did not designate the parts at issue as "emissions-related" and/or high-priced warranted parts that should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty. Thereby, Ford also was

able to avoid identifying the transmissions installed in the Class Vehicles as defined herein where coverage should be provided pursuant to the CCR as being high-priced warranted parts in the warranty books for the Class vehicles, which purport to identify all parts covered under the high-priced California Emissions Warranty for 7 years and 70,000 miles. Thus, Ford's violation of Section 2037(c)(1)(B) directly affected communications with consumers. By violating Section 2037(c)(1)(B), Ford was able to avoid disclosing in the warranty books the transmissions that should have been included as high-priced warranted parts.

119.   Ford's acts of unlawful competition as set forth above have caused members of the Classes to suffer damage, present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, inter alia, C.C.P. Section 1021.5.

120.   **Unfair Prong**.  Ford's conduct violates the unfair prong of the UCL.

121.   An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions. Ford's conduct violates all of these definitions.

122.   As alleged above, Ford engages and has engaged in a systematic business practice of intentionally failing to identify in the Class Vehicles' warranty books at the time of distribution, and in resources provided to its dealerships, numerous parts that Ford is obligated to identify as high-priced warranted parts and emission related parts by operation of law, including specifically the transmissions installed in the Class Vehicles where coverage

should be provided pursuant to the CCR. Ford does this in an effort to reduce the amount of money that Ford spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct. If Ford complied with California law and properly identified the transmission as a high-priced warranted part, then Ford dealerships would properly provide warranty coverage for them. Further, Ford's conduct is unfair because it intentionally refuses to provide warranty coverage for the transmissions installed in the Class Vehicles as defined herein for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be covered under the 7-year and 70,000-mile California Emissions Warranty. Plaintiff and members of the Classes have suffered injury in fact and lost money or property as a result of Ford's unfair business acts and practices as set forth in detail.

123.   Ford's failure to properly identify the transmissions installed in the Class Vehicles where coverage should be provided pursuant to the CCR, is a uniform, systematic, and intentional business practice on the part of Ford to minimize the amount of money that Ford has to pay out in warranty claims. This conduct violates California law.

124.   As a direct and proximate result of Ford's acts and practices in violation of the UCL, Plaintiff and members of the Classes have paid out of pocket to repair or replace the transmissions installed in the Class Vehicles where coverage should be provided pursuant to the CCR and/or other high-priced warranted parts and emissions related parts as defined herein that should have been covered by Ford under the 7-year and 70,000-mile California Emissions Warranty. As a result, consumers were denied warranty coverage, which is unfair.

125.   Ford's conduct does not benefit consumers or competition. Plaintiff and members of the Classes could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. Ford's conduct only benefits

Ford, by Ford wrongfully avoiding having to pay warranty claims which should be covered by the California Emissions Warranty.

126.    The gravity of the consequences of Ford's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous. Ford's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding the California Emissions Warranty, or is substantially injurious to the public, for the reasons set forth above.

127.    To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to Ford's justification and motives for its conduct, and as to the impact of Ford's conduct on Plaintiff and members of the Classes.

128.    Ford's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, inter alia, C.C.P. § 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Ford as follows:

(a) An order certifying the proposed Classes, designating Plaintiff as named representative of the Classes, and designating the Plaintiff's Counsel as Class Counsel;

(b) A declaration that Ford is financially responsible for notifying all members of the Classes about the wrongful conduct set forth herein; that Ford's conduct as alleged herein violates the California Emissions Warranty including, without limitation, that Ford has used, and continues to use, the wrong or incorrect standards for identifying "emission-related" parts and "high-priced warranty

parts" under the California Emissions Warranty; that Ford failed and is failing to properly identify and warrant under the California Emissions Warranty the transmissions in Class Vehicles; and/or that Plaintiff and the members of the Classes are entitled to warranty coverage under California Emissions Warranty for transmissions installed in Class Vehicles under the California Emissions Warranty described or defined herein;

(c) An order requiring Ford to (1) review its warranty books for all Class Vehicles and properly identify and warrant all "emissions-related parts" and (2) for all such parts, and for all parts that Ford already identified in its warranty books or that Ford previously identified and submitted to CARB as "emissions parts" or "emissions-related parts," recalculate whether those parts, in fact, should properly be characterized as "high priced parts" when the correct, rate is used; (3) on a going forward basis, use the proper standard for determining whether a part is "emissions-related" under the California Emissions Warranty; (4) otherwise accurately and comprehensively apply the CCR in order to properly identify all parts as defined and limited herein that should be covered under the California Emissions Warranty; and (5) reimburse both Plaintiff and members of the Classes for the money wrongfully paid by Plaintiff and members of the Classes relating to repairs which should have been covered by Ford under the California Emissions Warranty;

(d) An award to Plaintiff and members of the Classes of any repair costs they are owed, reimbursement for all out-of-pocket expenses, including diagnostic costs, that Class Members paid for repairs that should properly have been covered by Ford under the California Emissions Warranty and other amounts to which they may be legally entitled;

(e) An award to Plaintiff and members of the Classes of damages in an amount to be proven at trial;

(f) An award of attorneys' fees and costs as allowed by law and/or pursuant to

CLASS ACTION COMPLAINT

1  California Code of Civil Procedure § 1021.5;

2  (g) An award of pre-judgment and post-judgment interest;

3  (h) Leave to amend the Complaint to conform to the evidence produced at trial;

4  and,

5  (i) Other relief as may be appropriate under the circumstances.

6

7  Dated: June 14, 2022                    Respectfully submitted,

8                                          **POMERANTZ LLP**
                                           **THE LAW OFFICE OF ROBERT STARR**
9                                          **FRONTIER LAW CENTER**

10                                         By:_____/s/ Manny Starr_____

11                                                Jordan L. Lurie
                                                  Ari Y. Basser
12                                                Robert L. Starr
                                                  Manny Starr
13                                         *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28