O

# United States District Court
## Central District of California

| | |
|---|---|
| HUGO DE ANDA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FORD MOTOR COMPANY, INC. et al.,<br><br>　　　　　Defendants. | Case № 2:22-cv-04064-ODW (MAAx)<br><br>**ORDER DENYING**<br>**MOTION TO DISMISS [21]** |

## I.  INTRODUCTION

Plaintiff Hugo De Anda brings this putative class action against Defendant Ford Motor Company, Inc. for allegedly failing to provide a required emissions warranty for the vehicles that Ford distributes in California. (First Am. Compl. ("FAC"), ECF No. 19.)  Ford now moves to dismiss De Anda's First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(1) and 12(b)(6). (Mot. Dismiss FAC ("Motion" or "Mot."), ECF No. 21-1.)  For the following reasons, the Court **DENIES** Ford's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

### A. Regulatory Framework

This case arises out of Ford's alleged violations of California's regulations for the emissions of vehicles sold within California. These regulations require, among other things, manufacturers to provide special warranty coverage for a vehicle's emission control system ("California Emissions Warranty").

Specifically, manufacturers must provide a three-year/50,000-mile warranty for "any part . . . which affects any regulated emission" ("warranted parts"). *See* Cal. Code Regs. tit. 13, §§ 2035(c)(3)(B), 2037(b)(2). For any warranted part that is "high-priced" ("high-priced warranted parts"), manufacturers must provide a seven-year/70,000-mile warranty. *See* §§ 2037(b)(3), (c). A warranted part is "high priced" if its "replacement cost" exceeds a "cost limit" defined by a formula that considers the model year and the Consumer Price Index ("CPI"). *See id.* § 2037(c). A part's replacement cost is defined as "the retail cost to a vehicle owner"—including the part, labor, and diagnosis—in "the highest-cost metropolitan area of California." *See id.* § 2037(c)(2). For model year 2018 passenger cars, the cost limit was $610.00. (FAC ¶ 99.)

Manufacturers must identify all high-priced warranted parts in their applications to certify new vehicle models with the California Air Resources Board ("CARB"). *See* Cal. Code Regs. tit. 13, § 2037(c)(1)(B).

California's regulations also require vehicles to be equipped with an onboard diagnostic system ("OBD II system"), which "shall be capable of detecting malfunctions of the [vehicle's] monitored emission systems, illuminating a malfunction indicator light (MIL) to notify the vehicle operator of detected malfunctions." *Id.* § 1968.2(a). The regulations also require the OBD II system to store fault codes identifying detected malfunctions. *Id.*

### B. CARB Declaration and Consumer Complaint

De Anda alleges that CARB issued a declaration to educate courts about "CARB's interpretation and implementation of California's warranty requirements." (FAC ¶ 66.) According to De Anda, the declaration provides that "warranted parts" include any components that can or are required to illuminate the malfunction indicator light in the event of a malfunction, even if the primary function of the component is not emission control. (*Id.* ¶ 67.)

De Anda also alleges that, in response to a consumer complaint concerning a 2007 Nissan vehicle, CARB stated that a transmission replacement due to a malfunctioning pressure control solenoid should be covered under the California Emissions Warranty because a fault code was triggered which caused the malfunction indicator light to illuminate. (*Id.* ¶ 73.)

### C. De Anda's Allegations

Plaintiff De Anda owns a 2018 Ford Mustang ("Vehicle"), which he purchased and registered in California. (*Id.* ¶ 43.) Defendant Ford sells vehicles, including 2018 Ford Mustangs, in California. (*Id.* ¶ 39.)

On March 15, 2022, De Anda brought the Vehicle to a Ford-authorized repair facility because the Vehicle's check engine light was on and the Vehicle was jerking under certain conditions. (*Id.* ¶ 44.) The Vehicle had 62,128 miles on it at the time. (*Id.*)

First, the repair facility identified an issue with the Vehicle's catalytic converter and replaced the converter. (*See* Decl. Michael L. Turrill ISO Mot. ("Turrill Decl.") Ex. B ("Repair Order") 1, ECF No. 21-4.[2]) This repair is not the subject of this litigation.

Second, the repair facility verified the jerking condition and found that the "trans[mission] slips and has harsh engagements." (*Id.* (capitalization omitted).)

---

[2] The Court may consider the Repair Order under the doctrine of incorporation by reference. (*See infra* Part III.)

De Anda alleges that the repair team also identified the presence of the following diagnostic test codes: P2708 (indicating a defective transmission solenoid) and P2705 (detecting a problem with the way the transmission shifts). (*See* FAC ¶ 46.)

Ultimately, the repair team concluded that it was "neces[s]ary to remove and tear down trans[mission] due to internal component failure." (Repair Order 1 (capitalization omitted).) De Anda was charged a $170.00 diagnostic fee. (FAC ¶ 49.) In addition, De Anda alleges that the labor cost to remove and replace the transmission, excluding any repairs, far exceeds $1,000. (*Id.* ¶ 48.) Ford refused to cover the diagnostic fee and the recommended repair. (*Id.* ¶ 49.)

De Anda alleges that Ford unlawfully denied warranty coverage for the transmission repair, which involved high-priced emission parts that should have been covered under Ford's seven-year/70,000-mile California Emissions Warranty. (*Id.* ¶ 55.) De Anda further alleges that Ford intentionally does not identify all high-priced warranted parts in its application to certify its vehicle model in order to reduce its warranty exposure. (*Id.* ¶¶ 56–58.)

On June 14, 2022, De Anda filed this putative class action against Ford. (Compl., ECF No. 1.) After Ford moved to dismiss the Complaint, De Anda filed the First Amended Complaint, alleging a single cause of action for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"). (FAC ¶¶ 123–53.) De Anda seeks restitution for Ford's failure to provide a warranty in compliance with California's regulations and an injunction compelling Ford to properly identify and cover the transmission and high-cost transmission parts under the California Emissions Warranty. (*Id.* ¶¶ 144–45.) Ford now moves to dismiss De Anda's First Amended Complaint. (Mot.) The Motion is fully briefed. (Opp'n, ECF No. 23; Reply, ECF No. 25; *see also* Notice Suppl. Authority, ECF No. 32; Resp. Notice Suppl. Authority, ECF No. 33.)

### III. REQUESTS FOR JUDICIAL NOTICE

In connection with the Motion, Ford requests that the Court take judicial notice of five documents: (1) the Warranty Guide for 2018 model year Ford vehicles ("2018 Warranty Guide"); (2) De Anda's repair order from the March 15, 2022 dealer visit ("Repair Order"); (3) CARB's Emission Warranty Parts List, as amended February 22, 1985; (4) excerpts from CARB's 1999 Final Statement of Reasons for "LEVII" Amendments; and (5) excerpts from CARB's 1998 Initial Statement of Reasons for "LEVII" Amendments. (Def.'s Req. Judicial Notice ("Def.'s RJN") 1, ECF No. 22.)

Regarding the first two documents, Ford argues the Court should consider the 2018 Warranty Guide and the Repair Order because the First Amended Complaint incorporates them by reference by (1) referring to and relying on the 2018 Warranty Guide, and (2) directly quoting the Repair Order. (*Id.* at 1–2.)

Incorporation by reference is a "judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). A court may incorporate a document by reference if "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, courts should use caution when drawing inferences from an incorporated document. *Khoja*, 899 F.3d at 1003. This is because "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

Here, De Anda does not dispute the accuracy of the 2018 Warranty Guide and Repair Order. Because De Anda's allegations refer to and rely on the 2018 Warranty Guide and consist of quotes from the Repair Order, the Court finds that the First Amended Complaint incorporates them by reference. *Ritchie*, 342 F.3d at 908. Accordingly, the Court may consider these documents. *Id.*

Ford also requests that the Court take judicial notice of three documents from CARB on the basis that they "are government documents publicly available on CARB's website." (Def.'s RJN 3.) "Under [Federal Rule of Evidence] 201, the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015); *see also In re Reformulated Gasoline (RFG) Antitrust & Patent Litig.*, No. 05-cv-1671-CAS (VBKx), 2006 WL 7123690, at *1 n.3 (C.D. Cal. June 21, 2006) (taking judicial notice of "CARB's Final Statement of Reasons dated October 1992"). Accordingly, the Court grants Ford's request and takes judicial notice of the three documents from CARB.

Additionally, in connection with the Opposition, De Anda requests that the Court take judicial notice of two court orders available on PACER and issued in the Northern District of California and Central District of California. (Pl.'s Req. Judicial Notice 1, ECF No. 24.) The Court denies this request as moot because the Court need not take judicial notice of case law to consider it.

## IV. LEGAL STANDARDS

Ford moves to dismiss the First Amended Complaint pursuant to both Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. (*See generally* Mot.)

### A. Rule 12(b)(1)—Lack of Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), a party may move to dismiss based on a court's lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted). Conversely, a factual attack "contests the truth of

the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id*. The party attempting to invoke a court's jurisdiction bears the burden of proof for establishing jurisdiction. *See Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

### B.     Rule 12(b)(6)—Failure to State a Claim

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy "the minimal notice pleading requirements of Rule 8(a)(2)"—"a short and plain statement of the claim." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pursuant to this standard, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and "must construe all factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). However, a court need not blindly accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be

subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In addition, Rule 9(b) mandates a heightened pleading standard for cases sounding in fraud.[3] *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Under Rule 9(b)'s heightened pleading standard, "a party must state with particularity the circumstances constituting fraud," including "'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1124.

## V. DISCUSSION

The Court addresses Ford's arguments for dismissal under Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.

### A. Subject Matter Jurisdiction

Ford argues that this Court lacks subject matter jurisdiction because De Anda's action is not ripe and, thus, De Anda lacks standing. (Mot. 3–6.)

The basic rationale of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985). The Ninth Circuit cautions courts that their role is "neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Ripeness becomes an issue when a case is anchored in future events that may not

---

[3] The parties dispute whether Rule 9(b)'s heightened pleading standard applies. (*See* Mot. 7; Opp'n 10–11.) Here, De Anda alleges that Ford "intentionally" failed to identify covered parts in its warranties in a systematic effort to reduce its warranty exposure. (*See* FAC ¶¶ 56, 136–37.) As such, De Anda's claims are grounded in fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (holding that, even if fraud is not generally a required element of a claim, a claim that relies on a "unified course of fraudulent conduct" is "grounded in fraud" and must satisfy the particularity requirement of Rule 9(b)); *see also Martin v. Ford Motor Co.*, No. 20-cv-10365-DMG (JPRx), 2022 WL 2062470, at *2 (C.D. Cal. Feb. 17, 2022) (applying Rule 9(b) to UCL claim alleging defendant omitted covered parts from vehicle's warranty).

occur as anticipated, or at all. *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200–01 (1983). If a case is not ripe for adjudication, then courts lack subject matter jurisdiction and should dismiss on that basis. *St. Clair v. City of Chico*, 880 F.2d 199, 201–02 (9th Cir. 1989). "The burden of establishing ripeness . . . rests on the party asserting the claim." *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).

Here, Ford argues that De Anda alleges only a general transmission issue in the Vehicle and fails to identify the transmission components that require servicing. (Mot. 3–6.) Ford asserts the CARB regulations require Ford to warrant some, but not all, transmission components as high-priced warranted parts. (*Id.* at 4.) Moreover, Ford argues that the Repair Order indicates that "further investigation was needed to identify which transmission component(s) required servicing." (*Id.*) Thus, Ford argues that De Anda's claim is not ripe until he identifies a specific warranted part that is defective. (*Id.* at 4–5.)

In response, De Anda argues that the Repair Order shows the Vehicle's check engine light was illuminated and identifies two fault codes indicating defects in the transmission solenoid (fault code P2708) and the transmission pump or transmission speed sensor (fault code P2705). (Opp'n 4–7.) De Anda argues that these codes identify emissions-related defects and the components that need replacement. (*Id.*) Moreover, putting aside the facts of De Anda's particular repair, De Anda alleges that Ford engages in a systemic business practice of intentionally failing to identify the transmission and high-priced transmission components in its vehicle warranties in violation of California's emissions regulations. (FAC ¶ 136.)

The Court finds that De Anda's allegations are sufficient to establish ripeness. Accordingly, the Court denies Ford's Motion to Dismiss under Rule 12(b)(1) for lack of ripeness.

### B. Sufficiency of the Pleadings

To begin with, Ford argues that De Anda fails to state an affirmative misrepresentation claim. (Mot. 7–9.) However, in the Opposition, De Anda clarifies that his "claim is predicated on Ford's omissions, not misrepresentations." (Opp'n 13.) Accordingly, the Court denies as moot Ford's argument for dismissal based on De Anda's failure to state an affirmative misrepresentation.

Next, Ford makes several arguments for why De Anda fails to state a plausible omission claim.[4] (Mot. 9–25.)

#### 1. *Coverage under the California Emissions Warranty*

The primary dispute in this case concerns whether the transmission and transmission components, including the transmission solenoid, "affect[] any regulated emission" and, thus, should be covered under the California Emissions Warranty. *See* Cal. Code Regs. tit. 13, § 2035(c)(3). De Anda alleges that a malfunctioning transmission will increase regulated emissions, as measured in grams of emissions per mile driven, by causing "a delay in shift time, a delay in acceleration, excessive transmission slipping, an increase in the engine's revolutions per minute beyond what is normal, a deviation from the vehicle's shift pattern as designed, or a decrease in fuel economy." (FAC ¶ 78.)

Ford argues, among other things, that De Anda conflates (1) whether a given vehicle component affects regulated emissions when it is operating normally with (2) whether a given component contains a defect that causes it to affect regulated emissions. (Mot. 15.) However, this may be a distinction without a difference. If a

---

[4] Among these arguments, Ford contends that De Anda must allege that Ford deceived CARB by excluding certain transmission components from its list of high-priced warranted parts submitted to CARB. (Mot. 19–20.) Although CARB may reject or require modification to a manufacturer's list of high-priced warranted parts, *see* Cal. Code Regs. tit. 13, § 2037(c)(6), it does not follow that a manufacturer's list of high-priced warranted parts is complete merely because CARB did not reject it or request any modifications. Indeed, Ford identifies no authority stating that CARB's inaction is proof of a manufacturer's compliance with the CARB regulations or that a manufacturer must deceive CARB in order to violate the CARB regulations.

given vehicle component affects regulated emissions when it is defective, then it is plausible that it is a component whose operation affects regulated emissions. Regardless, as discussed further below, the question of whether a vehicle component affects regulated emissions is a factual one best reserved for summary judgment.

Ford argues that De Anda's sweeping interpretation of what constitutes a warranted part would produce absurd results such that "an underinflated tire or a sticky brake pad—both of which can result in decreased fuel economy and increased greenhouse gas emissions—should be covered by the emissions control system warranty." (Mot. 16.)

The parties cite district court decisions involving similar circumstances as those at issue here, but which reach different outcomes. For example, in *Velasco v. Chrysler Group LLC*, the plaintiff argued that the vehicle's Total Integrated Power Module—a computer that distributes power to the vehicle's electrical systems—is emissions-related because it affects or controls other parts of the car that are emissions-related. No. 13-cv-08080-DDP (VBKx), 2014 WL 4187796, at *1 (C.D. Cal. Aug. 22, 2014). The court found that plaintiff's theory lacked "any logical limiting principle" because, "under the logic of Plaintiffs' argument, a multitude of motor vehicle components would be emissions-related parts because they indirectly affect emissions by affecting or controlling emissions[-]related parts." *Id.* at 13. Therefore, the court concluded that California's emissions regulations cannot be "reasonably . . . construed to have such a sweeping scope" and dismissed the plaintiff's Magnuson-Moss Warranty Act claim. *Id.* at 13.

On the other hand, in *Martin v. Ford Motor Company*, the plaintiff alleged that Ford failed to cover her repairs to a defective Motor Electronics Cooling System Pump ("MECS"), which Ford did not consider to be a vehicle part that affects emissions. 2022 WL 2062470, at *2. There, the court concluded that it was premature to interpret the scope of the California Emissions Warranty and whether the MECS falls within it "because just how directly the MECS affects emissions involves

too many factual questions." *Id.* at 3. Moreover, the court distinguished the plaintiff's claims from those in *Velasco* because the plaintiff "articulate[d] a more discrete—albeit circuitous—path towards affecting emissions than simply saying that the part affects another emissions-related part." *Id.*

Here, the Court finds the approach articulated in *Martin* to be more persuasive under the present circumstances. De Anda alleges that a malfunctioning transmission affects regulated emissions in particular ways—by causing "a delay in shift time, a delay in acceleration, excessive transmission slipping, an increase in the engine's revolutions per minute beyond what is normal, a deviation from the vehicle's shift pattern as designed, or a decrease in fuel economy." (FAC ¶ 78.) Thus, as in *Martin*, De Anda alleges the transmission impacts emissions in discrete ways, rather than alleging that it merely affects other emissions-related parts. (*Id.*) Determining how directly the transmission affects emissions is a question of fact that is best reserved for summary judgment.

Accordingly, at this stage, De Anda may allege that the transmission and its components, including the transmission solenoid, are emissions-related parts.[5]

2. *De Anda's Repair*

Ford makes several arguments for why De Anda's repair in particular should not be covered by the California Emissions Warranty. (Mot. 10–14.) However, as alleged, De Anda's UCL claims hinge on Ford's omission of the transmission and its high-priced components from its warranty. (FAC ¶ 129.) De Anda alleges that this omission is an unlawful and unfair business practice that damages the putative class members, including by requiring them to pay out-of-pocket for repairs that should be

---

[5] The parties dispute whether, under the CARB regulations, a vehicle component is a warranted part that affects emissions solely because it triggers a malfunction indicator light to illuminate. (*See* Mot. 12–14; Opp'n 8–9.) "Although the regulations require coverage when a defect in an emissions-related part causes the check-engine light to illuminate, that does not mean that any defect that triggers the light is emissions-related." *Martin*, 2022 WL 2062470, at *3 n.5. However, the Court need not decide this issue now because it finds that De Anda plausibly alleges that the transmission and its components affect emissions beyond solely triggering a malfunction indicator light to illuminate. (*See* FAC ¶ 78.)

12

covered and to overpay for their vehicles when they are sold without a compliant California Emissions Warranty. (*Id.* ¶¶ 14–15, 138.) Thus, De Anda's claim does not hinge on his repair alone. (*See* Opp'n 12 ("A major focus of Plaintiff's action is to compel Ford to comply with the Regulations and properly identify all parts that 'affect regulated emissions' (i.e., 'emissions-related' parts) that Ford has, to date, failed to identify and include in Ford's warranty books.").)

Regardless, the Court finds that De Anda states a plausible claim for coverage under the California Emissions Warranty. De Anda alleges that he experienced jerking in his vehicle under certain conditions, which the repair team verified. (*Id.* ¶¶ 45–46.) He further alleges that his check engine light was on and that the repair team identified two diagnostic trouble codes (indicating a defective transmission solenoid and a problem with the way the transmission shifts). (*Id.* ¶¶ 46–47.) De Anda alleges the repair team indicated "it was necessary to remove and tear down the transmission due to internal component failure," which would necessarily exceed the cost limit for a 2018 vehicle. (*Id.* ¶¶ 48, 98.) Finally, De Anda alleges that CARB has, in past circumstances, considered a transmission replacement due to a malfunctioning pressure control solenoid to be a covered repair under the California Emissions Warranty. (*Id.* ¶¶ 72–76.) Although not dispositive, this helps to push De Anda's claim over the plausibility threshold. *See Iqbal*, 556 U.S. at 678.

3. UCL Claim

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The "unlawful" prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145 (N.D. Cal. 2013) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). The "unfair" prong "creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *In re Adobe Sys. Priv. Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014).

Ford argues that De Anda fails to plead a claim under the "unlawful" and "unfair" prongs of the UCL because he fails to adequately allege that the components at issue are warranted under the California Emissions Warranty and that Ford violated the CARB regulations. (Mot. 22–23.) However, as discussed above, the Court finds that De Anda sufficiently alleges that the transmission and its components are warranted parts. (*See supra* Part V.B.1.) De Anda alleges that Ford engages in a systemic business practice of omitting the transmission and high-priced transmission components from its warranties in violation of the CARB regulations. (FAC ¶ 136.) These allegations are sufficient to state a claim under the unlawful and unfair prongs of the UCL.

    4.    *Allegations of Knowledge*

Ford argues that knowledge is a required element under Rule 9(b) because De Anda's claim is grounded in fraud. (Mot. 20–22.) Ford further argues that De Anda insufficiently pleads Ford's knowledge that its warranty omitted a covered component. (*Id.*)

Although knowledge is not generally a required element of a UCL claim, De Anda's claim relies on a "unified course of fraudulent conduct" and is "grounded in fraud." *Vess*, 317 F.3d at 1103–04. Thus, De Anda's UCL claim must satisfy the particularity requirement of Rule 9(b). *See id.* "[A]lthough Rule 9(b) permits knowledge and intent to be pled in general terms, a plaintiff still must allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *S.F. Tech., Inc. v. Glad Prod. Co.*, No. 5:10-cv-00966-JF (PSGx), 2011 WL 940852, at *3 (N.D. Cal. Mar. 18, 2011) (internal quotation marks omitted).

De Anda asserts that Ford engages in "a uniform, systematic, and intentional business practice . . . to minimize the amount of money that Ford has to pay out in warranty claims" by failing to properly identify transmission and transmission components as high-priced warranted parts. (FAC ¶ 137.) De Anda alleges that, in

response to a consumer complaint concerning another vehicle, CARB determined that a transmission replacement due to a malfunctioning pressure control solenoid should be covered under the California Emissions Warranty. (*Id.* ¶ 73.) De Anda further alleges that CARB issued "a memo notifying all manufacturers of the requirements of the California Emissions Warranty and informing them of their obligations to meet these requirements." (*Id.* ¶ 75.) Viewing these allegations in the light most favorable to De Anda, the Court finds that De Anda sufficiently alleges Ford's knowledge of its obligations under the CARB regulations and that its warranty omitted covered parts.

### 5. *Equitable Relief*

Finally, Ford argues that De Anda's UCL claim should be dismissed because he has not established that he lacks an inadequate remedy at law and he fails to adequately allege a threat of future injury. (Mot. 24–25.)

"[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). In *Sonner v. Premium Nutrition Corporation*, the Ninth Circuit held that "[t]he traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and [Consumer Legal Remedies Act (CLRA)] in a diversity action." 971 F.3d 834, 844 (9th Cir. 2020). Thus, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Id.*; *see also Klaehn v. Cali Bamboo LLC*, No. 21-cv-55738, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022) (applying *Sonner* and affirming dismissal of UCL claims where "Plaintiffs failed to make any plausible allegation that they lacked an adequate remedy at law").

Here, De Anda seeks equitable relief in the form of restitution and injunctive relief. He alleges that Ford's failure to comply with the CARB regulations contributes to increased emissions, thereby polluting the air and harming the environment in contravention of the California Emissions Warranty. (FAC ¶¶ 145–52.) De Anda

further alleges that damages would not be sufficient in this case because Ford is uniquely capable of identifying which components in its vehicles are high-priced warranted parts, and Ford should be directed to identify those components. (*Id.* ¶ 153.) In light of these allegations, the Court finds De Anda plausibly alleges an inadequate remedy at law. *See Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.,* irreparable.").

Moreover, to be entitled to injunctive relief, De Anda must demonstrate that his potential injury is "certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Among other things, De Anda alleges that he cannot pay for the repair to his Vehicle, so his Vehicle does not shift properly, causing delays in acceleration and surging. (FAC ¶ 143.) De Anda further alleges that, as a result of Ford's failure to provide a compliant California Emissions Warranty, his Vehicle is unsafe and emits increased regulated emissions. (*Id.*) Additionally, De Anda alleges that Ford, by continuing to violate the CARB regulations, causes its vehicles to release increased harmful vehicle emissions, polluting the environment. (*See id.* ¶¶ 150–52.) The Court finds that De Anda plausibly alleges an impending harm, sufficient to state a claim for injunctive relief.

## VI. CONCLUSION

For the reasons discussed above, the Court **DENIES** Ford's Motion to Dismiss. (ECF No. 21.) **IT IS SO ORDERED.**

April 5, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**